**CHRISTIAN ANDERSON PLC**
JAMES S. CHRISTIAN (SBN 023614)
5050 North 40th Street, Suite 320
Phoenix, Arizona 85018
Telephone: (602) 478-6828
Email: James@ChristianAndersonLaw.com
*Local Counsel for Public Employees' Retirement System of Mississippi*

**LABATON SUCHAROW LLP**
JAMES W. JOHNSON (*pro hac vice* to be filed)
MICHAEL H. ROGERS (*pro hac vice* to be filed)
JAMES T. CHRISTIE (*pro hac vice* to be filed)
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477
jjohnson@labaton.com
mrogers@labaton.com
jchristie@labaton.com
*Counsel for Public Employees' Retirement System of Mississippi*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Public Employees' Retirement System of Mississippi, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Sprouts Farmers Market, Inc., J. Douglas Sanders, Amin N. Maredia, Donna Berlinski, Andrew S. Jhawar, Shon Boney, Joseph Fortunato, Lawrence P. Molloy, Steven H. Townsend, AP Sprouts Holdings, LLC, AP Sprouts Holdings (Overseas), L.P., Barclays Capital Inc., and Morgan Stanley & Co. LLC,<br><br>Defendants. | CASE NO.: _____<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE SECURITIES ACT OF 1933**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff, Public Employees' Retirement System of Mississippi ("Mississippi PERS" or "Plaintiff") alleges the following based upon the investigation of Plaintiff's counsel, which included a review of U.S. Securities and Exchange Commission ("SEC") filings by Sprouts Farmers Market, Inc. ("Sprouts" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a securities class action on behalf of all purchasers of the common stock of Sprouts pursuant to the Offering Documents (as defined herein) issued in connection with the underwritten secondary public offering for an aggregate of 15,847,800 shares of Sprouts common stock by AP Sprouts Holdings, LLC ("AP Sprouts Holdings") and AP Sprouts Holdings (Overseas), L.P. ("AP Sprouts Overseas," and together with AP Sprouts Holdings, the "Selling Stockholders"), which closed on or about March 10, 2015 (the "Offering"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

2. Pursuant to the Securities Act, Defendants (as defined herein) are strictly liable for the material misstatements and omissions in the Offering Documents issued in connection with the Offering, and the claims herein specifically exclude any allegations of knowledge or scienter. The claims in this action are based solely on strict liability and negligence, and are not based on any reckless or intentionally fraudulent conduct by or on behalf of Defendants—*i.e.*, they do not allege, arise from, or sound in, fraud. Plaintiff specifically disclaims any allegation of fraud, scienter, or recklessness in these non-fraud claims.

**JURISDICTION AND VENUE**

3. The claims alleged herein arise under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933. *See* 15 U.S.C. §§ 77k, 77*l*(a)(2), and 77o. Jurisdiction is conferred

1

by and venue is proper pursuant to Section 22 of the Securities Act as Sprouts is heaquartered in this District.Many of the acts and omissions giving rise to the violations of law complained of herein, including the preparation and dissemination to the investing public of the materially untrue and misleading Offering Documents took place in this District.

4. In connection with the allegations herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

5. Plaintiff Mississippi PERS was established in 1952 and provides retirement and related benefits for all Mississippi state and public education employees, officers of the Mississippi Highway Safety Patrol, and certain elected officials, among others.  As of June 30, 2014, Mississippi PERS oversaw approximately $29 billion on behalf of more than 387,000 members and their beneficiaries.  Mississippi PERS, as set forth in the accompanying certification, attached hereto as Exhibit A, purchased Sprouts common stock pursuant to the Offering, and was damaged as a result of Defendants' wrongdoing as alleged herein.

6. Defendant Sprouts is a Delaware corporation that maintains its principal place of business at 11811 N. Tatum Boulevard, Suite 2400, Phoenix, Arizona 85028.  Sprouts operates a chain of grocery markets with 208 stores in 13 states as of June 28, 2015.

7. Defendant J. Douglas Sanders ("Sanders") currently serves as the Company's Executive Chairman of the Board.  At the time of the Offering, Sanders served as the Company's President and Chief Executive Officer ("CEO").  CEO Sanders signed, among other documents, the Company's Annual Report on Form 10-K for the year ended December 31, 2014 and the Registration Statement (as defined herein).  CEO Sanders has served as the Company's Executive Chairman of the Board since August 2015.  CEO Sanders resides in Maricopa County, Arizona.

8.  Defendant Amin N. Maredia ("Maredia") has served as the Company's CEO since August 2015. At the time of the Offering, Maredia served as the Company's Chief Financial Officer ("CFO"). CFO Maredia signed, among other documents, the Company's Annual Report on Form 10-K for the year ended December 31, 2014 and the Registration Statement. CFO Maredia resides in Maricopa County, Arizona.

9.  Defendant Donna Berlinski ("Berlinski") was, at the time of the Offering, the Controller and a Vice President of the Company. Controller Berlinski, as the Company's principal accounting officer, signed the Company's Registration Statement. Controller Berlinski resides in Maricopa County, Arizona.

10. Defendant Andrew S. Jhawar ("Jhawar") currently serves as a member of the Company's Board, and at the time of the Offering, was the Chairman of the Board of Sprouts. Chairman Jhawar signed the Registration Statement, and is a senior partner of Apollo Management, L.P. ("Apollo Management"), which, as set forth below, controlled the Selling Stockholders at the time of the Offering. Chairman Jhawar resides in Los Angeles County, California.

11. Defendant Shon Boney ("Boney") is, and was at the time of the Offering, a co-founder and director of Sprouts. Director Boney signed the Registration Statement. Director Boney resides in San Diego County, California.

12. Defendant Joseph Fortunato ("Fortunato") is, and was at the time of the Offering, a director of Sprouts. Director Fortunato signed the Registration Statement. Director Fortunato resides in Collier County, Florida.

13. Defendant Lawrence P. Molloy ("Molloy") is, and was at the time of the Offering, a director of Sprouts. Director Molloy signed the Registration Statement. Director Molloy resides in Jefferson County, Alabama.

14. Defendant Steven H. Townsend ("Townsend") is, and was at the time of the Offering, a director of Sprouts. Director Townsend signed the Registration Statement. Director Townsend resides in Windham County, Connecticut.

15. The defendants named in paragraphs 7 through 14 are referred to herein as the "Individual Defendants." Each of the Individual Defendants signed the Offering Documents (as defined herein) and/or otherwise participated in the drafting and dissemination of the Offering Documents.

16. AP Sprouts Holdings, LLC ("AP Sprouts Holdings") is a limited liability company organized under the laws of Delaware, with an address set forth in the Offering Documents of One Manhattanville Road, Suite 201, Purchase, New York, in Westchester County. Corporation Service Company of Wilmington, Delaware serves as the registered agent for AP Sprouts Holdings. At the time of the Offering, the manager of AP Sprouts Holdings was Apollo Management VI, L.P. ("AMVI"). The general partner of AMVI was AIF VI Management, LLC ("AIFVI"). The sole member and manager of AIFVI was Apollo Management. AP Sprouts Holdings participated in the drafting and dissemination of the Offering Documents.

17. AP Sprouts Holdings (Overseas), L.P. ("AP Sprouts Overseas") is a limited partnership organized under the laws of Delaware, with an address set forth in the Offering Documents of One Manhattanville Road, Suite 201, Purchase, New York, in Westchester County. Corporation Service Company of Wilmington, Delaware serves as the registered agent for AP Sprouts Overseas. At the time of the Offering, the general partner of AP Sprouts Overseas was AMVI. The general partner of AMVI was AIFVI. The sole member and manager of AIFVI was Apollo Management. AP Sprouts Overseas participated in the drafting and dissemination of the Offering Documents.

18. The defendants named in paragraphs 16 and 17 are referred to herein as the "Selling Stockholders."

19. Defendant Barclays Capital Inc. ("Barclays") is a financial services company that acted as underwriters of the Offering. Barclays participated in the drafting and dissemination of the Offering Documents. Barclays maintains its headquarters in New York County, New York.

20. Morgan Stanley & Co., LLC ("Morgan Stanley") is a financial services company that acted underwriters of the Offering. Morgan Stanley participated in the drafting and dissemination of the Offering Documents. Morgan Stanley maintains an office in Maricopa County, Arizona.

21. The defendants named in paragraphs 19 and 20 are referred to herein as the "Underwriter Defendants." Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Offering Documents as follows:

(a) The Underwriter Defendants are investment banking houses that specialize in, *inter alia*, underwriting public offerings of securities. They served as the underwriters of the Offering and received more than $5.2 million in the Offering through an underwriting discount of $0.33 per share. The Underwriter Defendants determined that in return for their share of the Offering proceeds, they were willing to merchandize Sprouts stock in the Offering. The Underwriter Defendants marketed the Offering and presented favorable information about the Company, its operations, and its financial prospects;

(b) The Underwriter Defendants requested and obtained an agreement from Sprouts that the Company would indemnify and hold harmless the Underwriter Defendants from certain liabilities, including liabilities under the federal securities laws, or to contribute to payments the Underwriter Defendants may be required to make in respect to those liabilities;

(c) Representatives of the Underwriter Defendants assisted Sprouts, the Selling Stockholders, and the Individual Defendants in planning the Offering including discussions regarding the following: (i) the strategy to best accomplish the Offering; (ii) the terms of the Offering, including the price at which Sprouts stock would be offered to the public; (iii) the language to be used in the Offering Documents; and (iv) the disclosures regarding Sprouts and its business that would be made in the Offering Documents. As a result of this course of contact and communication between the Underwriter Defendants' representatives and the Company's management and senior executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, the

1  existence, scope and extent of the then-current trend of price deflation that Sprouts was
2  experiencing, as well as the resulting effect of that trend on the Company's outlook for
3  revenue growth; and

4       (d)    The Underwriter Defendants caused the Offering Documents to be filed
5  with the SEC and declared effective in connection with the offers and sales of securities
6  registered thereby, including those to Plaintiff and the other members of the Class.

7    22.    Sprouts, the Individual Defendants, the Selling Stockholders, and Underwriter
8  Defendants are collectively referenced herein as "Defendants."

9                           **SUBSTANTIVE ALLEGATIONS**

10   23.    Founded in 2002, Defendant Sprouts operates a chain of grocery stores that has
11  grown to include 208 stores in thirteen states as of June 28, 2015.

12  **Sprouts' Ownership Structure**

13   24.    On August 6, 2013, Sprouts completed its initial public offering (the "IPO").
14  Immediately prior to the Company's IPO, a majority of Sprouts common stock,
15  approximately 51.8 percent, was held by certain investment funds affiliated with and
16  managed by Apollo Management VI, L.P., including AP Sprouts Holdings and AP Sprouts
17  Overseas, the Selling Stockholders. Apollo Management VI, L.P. and the Selling
18  Stockholders (among other related funds) are affiliates of Apollo Global Management, LLC
19  (collectively referenced herein as "Apollo").

20   25.    As part of the IPO, the Company offered 17,702,215 shares of common stock
21  as well as granting the underwriters an option to purchase up to an additional 2,775,000
22  shares at the IPO price within 30 days of the IPO. Ultimately, the entire underwriters'
23  overallotment option was exercised in its entirety.

24   26.    After the completion of the IPO, Apollo owned 65,217,769 shares, or
25  approximately 44.5 percent, of the Company's outstanding common stock.

26   27.    Pursuant to a stockholders agreement (the "Stockholders Agreement") between
27  Sprouts, Apollo, and other entities entered into in contemplation of the IPO, Sprouts granted
28  Apollo the right to require the Company to file up to five registration statements with the

SEC for the resale of Apollo's shares of Sprouts common stock, subject to certain limitations.

28. Thereafter, Apollo sold portions of its holdings of Sprouts common stock in a series of four registered offerings pursuant to prospectuses dated: (1) November 25, 2013; (2) March 27, 2014; and (3) August 12, 2014; and a prospectus supplement dated November 12, 2014. During this period, Apollo also sold Sprouts common stock via unregistered open market transactions.

29. As of March 5, 2015, Apollo still held 15,847,800 shares of Sprouts common stock through the Selling Stockholders, comprising 10.4 percent of the Company's common stock, and was eligible to require the Company to conduct one final registered offering of Sprouts common stock pursuant to the Stockholders Agreement.

**Sprouts' Business Model**

30. Sprouts' business model includes offering a broad range of products intended to cater to consumers' growing interest in healthy eating and living, including fresh, natural, and organic produce. Focusing on natural and organic offerings, Sprouts purports to offer high-quality alternatives to traditional, national branded consumer packaged goods generally found at conventional grocery retailers.

31. Specifically, Sprouts seeks to position itself as a value leader in fresh produce, a strategy intended to drive trial visits by shoppers who will then become loyal customers.

32. The sale of fresh produce represents a substantial portion of the Company's revenues, a measure that the Company closely tracks. For example, on August 7, 2014, during the Company's conference call for investors and analysts to discuss results of operations for the second quarter of 2014, CEO Sanders stated in part:

> As many of you know Sprouts attracts the everyday grocery shopper by offering fresh, high quality produce at the best prices in town. Why produce? It's because produce is a healthy product the everyday grocery shopper understands and buys every week. ***With approximately 25% of our revenue coming from the produce department***, we continue to benefit from the consumer's growing interest in improving their diet by making healthier food choices.

7

(All emphases are added unless otherwise noted.)

**<u>False and Misleading Statements and Omissions in Connection with the Offering</u>**

33. Among other metrics, Sprouts tracks and reports sales growth as an indicator of the Company's financial performance and periodically offered guidance regarding management's projections for sales growth. For example, on February 25, 2015, Sprouts issued a press release discussing the Company's results of operations for the fourth quarter and full year of 2014, which included guidance for sales growth of between five and six percent for the first quarter of 2015, and between six and seven percent for the full fiscal year of 2015.

34. As part of its description of the Company's competitive strengths in its Annual Report on Form 10-K for fiscal year ended December 28, 2014, filed with the SEC on February 28, 2015 (as amended, the "2014 10-K"), Sprouts stated:

> *Resilient business model with strong financial performance.* We achieved positive, pro forma comparable store sales growth of 9.9%, 10.7%, 9.7%, 5.1% and 2.3% in fiscal 2014, 2013, 2012, 2011 and 2010, respectively . . . . We believe the consistency of our performance over time, even through the economic downturn from 2008 to 2010, and across geographies and vintages is the result of a number of factors, including our ***distinctive value positioning*** and merchandising strategies, product innovation and a well-trained staff focused on customer education and service. In addition, we believe our high volume and low-cost store model enhance ***our ability to consistently offer competitive prices on a complete assortment of fresh, natural and organic products***.

35. Sprouts' 2014 10-K also set forth certain risk factors related to the Company, its operations, and outlook, including the following:

> General economic conditions that impact consumer spending could adversely affect our business.
>
> &ast;&ast;&ast;
>
> [I]nflation or deflation can impact our business. ***Food deflation could reduce sales growth*** and earnings, while food inflation, combined with reduced consumer spending, could reduce gross

8

profit margins. As a result, our operating results and financial condition could be materially adversely affected.

Sprouts' 2014 10-K further discussed the potential effects of produce price deflation—including highlighting a past instance in which produce price deflation led to positive effects on the Company's margins—as part of the notes to the financial statements:

> Inflation and ***deflation in the prices of food and other products we sell may periodically affect our sales***, gross profit and gross margin. The short-term impact of inflation and deflation is largely dependent on whether or not the effects are passed through to our customers, which is subject to competitive market conditions. ***In the first half of fiscal 2012, we experienced produce price deflation, which contributed to higher gross margins*** in our business during that period and the full fiscal year.
>
> Food inflation and deflation is affected by a variety of factors and our determination of whether to pass on the effects of inflation or deflation to our customers is made in conjunction with our overall pricing and marketing strategies. Although ***we may experience periodic effects on sales, gross profit and gross margins as a result of changing prices***, we do not expect the effect of inflation or deflation to have a material impact on our ability to execute our long-term business strategy.

36. However, the Company's 2014 10-K did not offer any qualifying discussion of then-current trends in produce price deflation or the effects of such deflation on the Company's sales growth or outlook.

37. On March 4, 2015, Sprouts filed a Registration Statement on Form S-1 (the "Registration Statement") with the SEC registering the Selling Stockholders' remaining 15,847,800 shares of Sprouts common stock for sale to the public at a maximum offering price of $35.85 per share. The Registration Statement included a prospectus dated March 4, 2015. The following day, on March 5, 2015, Sprouts filed a prospectus supplement on Form 424B4 to the prospectus included in the Registration Statement (the "Prospectus" and together with the Registration Statement, the "Offering Documents"), with the final offering price of $35.30 per share.

9

38. On or about March 6, 2015, Sprouts conducted the registered public sale of the Selling Stockholders remaining shares of Sprouts common stock. Plaintiff and other members of the Class purchased Sprouts common stock pursuant to the Offering Documents.

39. However, the Offering Documents were negligently prepared, and, as a result, contained untrue statements of material facts and/or omitted to state facts necessary to make the statements made not misleading.

40. Specifically, the Offering Documents incorporated by reference, among other documents, the Company's 2014 10-K. However, the Offering Documents failed to offer any qualifying discussion of the Company's statements regarding produce price deflation set forth in the 2014 10-K, or any discussion of then-current trends in price deflation and its effects on the Company's revenue growth.

41. The Offering closed on or about March 10, 2015. The Offering was successful for the Selling Stockholders, who sold 15,847,800 shares of Sprouts common stock to the public at $35.30 per share, raising more than $559.4 million in gross proceeds.

42. The false and misleading nature of Sprouts' Offering Documents was revealed in part on May 7, 2015, when the Company issued a press release after the close of the trading session setting forth its results of operations for the first quarter of 2015. Sprouts revealed disappointing results, including sales and earnings that missed analysts' expectations as well as sales growth of 4.8 percent—below the lowest projected guidance level of between five and six percent for the quarter.

43. That same day, Sprouts hosted a conference call for investors and analysts to discuss these results. As part of his prepared statement, Executive Chairman Sanders stated in relevant part:

> [W]e *began experiencing accelerating produce deflation in mid-February . . . which increased significantly throughout March*.

Later, during the question-and-answer session, CFO Maredia engaged in the following exchange in relevant part:

> ANALYST: I wanted to just ask on the inflation specifically.

10

> CFO MAREDIA: We were expecting full Q1 inflation of about 2% and we ended up actuals closer to 1% range, and that was really driven by, **we began seeing in the middle of February acceleration and deflation in the produce area through the end of February as well as all the way through March** and continuing into April.

44. In response to these revelations, Sprouts' stock price fell $2.98 per share, or 9.86 percent, to close at $27.23 per share on May 8, 2015—significantly below the $35.30 Offering price.

45. The false and misleading nature of Sprouts' Offering Documents was further revealed on May 21, 2015, when CFO Maredia participated in the BMO Capital Markets 10th Annual Farm to Market Conference. As part of the presentation, CFO Maredia participated in the following exchange in relevant part:

> ANALYST: I guess first question following the last quarter, *there's a lot of questions on produce*. So I was wondering if you can just spend a few minutes talking about produce and the environment there. . . .
>
> CFO MAREDIA: As you know, *produce is 25% of our business*.
>
> \*\*\*
>
> [W]hat we saw this year was, in the first half of the quarter, due to weather conditions, we saw tightness in supply in the produce which impacted our ability to promote. And *in the back half of the quarter, we saw something pretty unusual which we had not seen before, frankly.*
>
> *[W]e started to see a tremendous amount of deflation. In February, we saw huge deflation in certain categories* . . . .

46. The full scope of the false and misleading nature of Spouts' Offering Documents was finally revealed on August 6, 2015, when the Company issued a press release after the close of the trading session setting forth its results of operations for the second quarter of 2015. Sprouts revealed disappointing results, including sales that missed

1 analysts' expectations, and reduced the Company's guidance for full-year sales growth
2 guidance by approximately 18 percent, to a range of between four and five percent.
3     47.    That same day, Sprouts hosted a conference call for investors and analysts to
4 discuss these results.  As part of his prepared statement, Executive Chairman Sanders stated
5 in relevant part:

> The strong tonnage growth we achieved during the quarter was offset by deflation of nearly 10% in April which improved to mid single digits in the lateral weeks of the quarter.
>
> We expect the level of deflation to begin to settle as we work through the rest of the summer months.

Later, during the question-and-answer session, the Company's Chief Operating Officer ("COO"), Jim Nielsen, engaged in the following exchange in relevant part:

> ANALYST:  I will ask about inflation why is it that you're still seeing as much deflation as you are?  I thought I'd spoken to Amin and said that it had sort of flattened out in June but we're still seeing it.  And can you talk maybe about the dynamics that are causing that?
>
> COO NIELSEN:  I think in my the last earnings call we projected it to kind of subside throughout the quarter and we didn't see that . . . .  And we sell a disproportionate amount of fruit and that's really the categories you're seeing a lot of pressure in and also we are starting to see a little bit of pressure on a year-over-year basis because chicken and pork become a very deflationary over the course of the last two periods.

    48.    In response to these revelations, Sprouts' stock price fell $2.73 per share, or 11.62 percent, to close at $20.77 per share on August 7, 2015—well below the $35.30 Offering price.

    49.    Pursuant to Item 303 of Regulation S-K (17 C.F.R. § 229.303), and the SEC's related interpretive releases thereto, issuers are required to disclose events or uncertainties that have had or are reasonably likely to cause the registrant's financial information not to be indicative of future operating results, including any known trends.  At the time of the Offering, Sprouts was experiencing a significant adverse trend in deflationary pricing that

was negatively affecting the Company's revenue and its outlook for revenue growth. This adverse fact, and the uncertainties associated therewith, were reasonably likely to have a material impact on the Company's profitability, and, therefore, were required to be disclosed in the Offering Documents, but were not.

50. At the time of the filing of this action, Sprouts common stock traded at approximately $21.10 per share—more than 38 percent below the Offering price.

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action as a class action on behalf of all who purchased Sprouts common stock pursuant to the Offering Documents issued in connection with the Offering (the "Class"). Excluded from the Class are Defendants, those who served as officers, directors, and/or affiliates of Defendants at all relevant times, members of the immediate families and their legal representatives, heirs, successors, or assigns of any excluded person or entity, and any entity in which any Defendant has or had a controlling interest.

52. The members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery. Plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Sprouts or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

53. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law as set forth herein.

54. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

55.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants violated the Securities Act;

(b)     whether the Offering Documents were negligently prepared and contained inaccurate statements of material fact and/or omitted material information required to be stated therein; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

56.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**FIRST CAUSE OF ACTION**

**For Violation of Section 11 of the Securities Act**
**Against Company, the Individual Defendants, and the Underwriter Defendants**

57.     Plaintiff incorporates paragraphs 1 through 56 by reference.

58.     This Cause of Action is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Company, the Indvidual Defendants, and the Underwriter Defendants.

59.     The Offering Documents issued in connection with the Offering contained untrue statements of material facts, or omitted to state material facts necessary to make the statements made not misleading, or that were required to be stated therein.

60.     Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions contained in the Registration Statement.

14

61. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

62. By reason of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

63. Plaintiff acquired Sprouts common stock pursuant to the Offering.

64. Plaintiff and the Class have sustained damages. The value of Sprouts common stock has declined substantially subsequent to and due to Defendants' violations.

65. At the time of their purchases of Sprouts common stock, Plaintiff and other members of the Class did not know the true facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures alleged herein.

66. Less than one year had elapsed between the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based and the time that Plaintiff commenced a prior action against the same Defendants based on the same claims on March 4, 2016 in Maricopa County Superior Court, Arizona. Less than three years has elapsed between the time that the securities upon which this cause of action is brought were offered to the public and the time Plaintiff commenced this action.

## SECOND CAUSE OF ACTION

**For Violation of Section 12(a)(2) of the Securities Act**
**Against the Company, the Individual Defendants, and the Underwriter Defendants**

67. Plaintiff incorporates paragraphs 1 through 66 by reference.

68. By means of the defective Offering Documents, the Company, the Individual Defendants, and the Underwriter Defendants promoted and sold Sprouts common stock to Plaintiff and other members of the Class.

69. The Offering Documents contained untrue statements of material fact, and concealed and failed to disclose material facts, as set forth herein. The Company, the Individual Defendants, and the Underwriter Defendants owed Plaintiff and the other

members of the Class who purchased Sprouts common stock pursuant to the Offering Documents the duty to make a reasonable and diligent investigation of the statements contained in the Offering Documents to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  The Company, the Individual Defendants, and the Underwriter Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Offering Documents as set forth above.

70. Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Offering Documents at the time that Plaintiff acquired Sprouts common stock.

71. By reason of the conduct alleged herein, the Company, the Individual Defendants, and the Underwriter Defendants violated Section 12(a)(2) of the Securities Act. As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased Sprouts common stock pursuant to the Offering Documents sustained damages in connection with their purchases of the stock.  Accordingly, those members of the Class who continue to hold Sprouts common stock issued pursuant to the Offering Documents have the right to rescind and recover the consideration paid for their shares, and hereby tender their common stock to the Company, the Individual Defendants, and/or the Underwriter Defendants.  Plaintiff and other members of the Class who have sold their common stock seek damages to the extent permitted by law.

72. Less than one year had elapsed between the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based and the time that Plaintiff commenced a prior action against the same Defendants based on the same claims on March 4, 2016 in Maricopa County Superior Court, Arizona.  Less than three years has elapsed between the time that the securities upon which this cause of action is brought were offered to the public and the time Plaintiff commenced this action.

## THIRD CAUSE OF ACTION

### For Violation of Section 15 of the Securities Act
### <u>Against the Selling Stockholders, and the Individual Defendants</u>

73. Plaintiff incorporates paragraphs 1 through 72 by reference.

74. This Cause of Action is brought pursuant to Section 15 of the Securities Act against the Company, the Selling Stockholders, and the Individual Defendants.

75. The Selling Stockholders were each control persons of Sprouts by virtue of: (1) their right to enforce certain demand registration rights in the Stockholders Agreement requiring Sprouts to register a public offering of Sprouts common stock on their behalf; (2) their significant equity ownership interest in Sprouts common stock; and (3) their direct and/or indirect business and/or personal relationships with Defendant Jhawar and others.

76. By reason of the foregoing, the Selling Stockholders was able to, and did control the contents of the Offering Documents, which contained materially untrue or misleading information and omitted material facts.

77. The Individual Defendants each were control persons of Sprouts by virtue of their positions as directors and/or senior officers of the Company. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Sprouts. Sprouts controlled the Individual Defendants and all of the Company's employees.

78. The Individual Defendants each were culpable participants in the violations of Section 11 of the Securities Act alleged in the First Cause of Action above, based on their having signed or authorized the signing of the Offering Documents and having otherwise participated in the process that allowed the Offering to proceed to completion.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, certifying Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding rescission or a rescissory measure of damages; and

D. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

E. Awarding such other relief including equitable and/or injunctive relief as deemed appropriate by the Court.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  March 2, 2018                    Respectfully submitted,

**CHRISTIAN ANDERSON PLC**

s/ James S. Christian
JAMES S. CHRISTIAN (SBN 023614)
5050 North 40th Street, Suite 320
Phoenix, Arizona 85018
Telephone: (602) 478-6828
James@ChristianAndersonLaw.com
*Local Counsel for Public Employees'*
*Retirement System of Mississippi*

**LABATON SUCHAROW LLP**
JAMES W. JOHNSON (*PHV* to be filed)
MICHAEL H. ROGERS (*PHV* to be filed)
JAMES T. CHRISTIE (*PHV* to be filed)
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477
jjohnson@labaton.com
mrogers@labaton.com
jchristie@labaton.com
*Counsel for Public Employees' Retirement*
*System of Mississippi*